BLAKELEY *v.* STATE.

Crim. 4034.

Opinion delivered June 7, 1937.

*Scipio A. Jones,* for appellant.

*Jack Holt,* Attorney General, and *John P. Streepey,* Assistant, for appellee.

SMITH, J. Appellant was fined $50 in the municipal court of the city of Little Rock for operating an insurance business without legal authorization so to do. He prosecuted an appeal to the circuit court, where, upon his trial, the jury returned a verdict of guilty under the direction of the presiding judge. Appellant admits that he has received no authority from the Insurance Department to

operate an insurance business. His defense is that he did not engage in or operate a business of that nature.

Appellant, also, insists that no proper information was filed against him in the municipal court. His appeal from the judgment of that court and the trial of his appeal in the circuit court renders this unimportant. In the very recent case of *Simpson and Elliott* v. *State,* 193 Ark. 623, 101 S. W. (2d) 795, it was said: "These questions are all disposed of by the opinion in the case of *Mayfield* v. *State,* 160 Ark. 477, 254 S. W. 841, where it was said: 'We do not stop to inquire whether there was any error in the procedure before the justice or not, as the cause was appealed to the circuit court, where there was a trial *de novo.* The original affidavit and warrant had brought appellant into court, and the justice, sitting as an examining court, found appellant was guilty of an offense and imposed a fine for its commission. This became the offense with the commission of which appellant was charged upon his appeal to the circuit court, and it was unimportant to inquire whether there had been irregularities leading to this situation, because the trial in the circuit court was *de novo.* (Citing cases.)' " *State ex rel.* v. *Ball, ante,* p. 132, 105 S. W. (2d) 863.

The information filed against appellant charged a violation of act 139 of the Acts of 1925, p. 405. Section 16 of this act provides that any person who violates any of its provisions shall be fined not less than fifty nor more than five hundred dollars. Appellant complains of the action of the presiding judge in directing the jury to return a verdict of guilty. In the recent case of *Collins* v. *State,* 183 Ark. 425, 36 S. W. (2d) 75, it was said: "In misdemeanor cases, where the punishment is by fine only, the circuit judge would have the power to direct a verdict of guilty where the facts were undisputed and where guilt from all the evidence was the only inference that could be drawn. But where the punishment may be imprisonment or where the law provides that it may be fine or imprisonment, the trial judge has no power to direct a verdict."

Act 139, *supra,* does not provide for punishment by imprisonment, and the "circuit judge would have the

power to direct a verdict of guilty where the facts were undisputed and where guilt from all the evidence was the only inference that could be drawn.'' Was such the case here? Act 139 is entitled: ''An Act to Define Assessment Life, Health and Accident Associations or Companies, Industrial Insurance Companies, to Provide How Same May Be Organized and Transact Business in This State, for Proper Regulation of Same, and for Other Purposes.'' Its numerous sections effectuate the purposes declared in its title.

Appellant admits the establishment of an organization, which he named the ''Union Aid Society.'' He admitted, also, that he issued a certificate of membership, signed by himself as president, to persons whose applications for membership were approved. This certificate contains, as a part thereof, a copy of the by-laws of the organization, which declared the purpose of the organization as follows: ''Purpose. To unite reputable men and women for the purpose of engaging in any activity for the mutual benefit of its members, and for the purpose of giving aid to themselves and their dependents and to promote organization and cooperation; to improve working conditions, hours, pay, etc., to promote closer relationship between its members, to assist them in the improvements of their civic, social, educational, and economical conditions, and to provide a fund out of which members who are in good standing may receive aid and financial relief in case of distress.''

A section of the by-laws relating to membership reads as follows: ''Membership. In order to become a member of this society, the applicant must be of good moral character and be in good health and from 1 year to 80 years of age, and may apply for membership by signing the application and paying the membership fee and registration fee respectively.''

In regard to the issuance of certificates of membership the by-laws provide: ''Certificate. When an applicant is accepted by this society and the membership and registration fees are paid, the society will issue to such an applicant a copy of the by-laws. But no contributions shall arise thereon to the society, nor any benefit be due

the applicant until the acceptance of such application and its delivery to and acceptance by the applicant while alive and in good health free from diseases.''

The by-laws, also, provide for the election of a board of directors, who shall select a president, ''who may act as secretary to the board of directors, but is not a member of the board, and shall hold office during good behavior and efficient service.''

The president is given charge of the general business affairs of the society, and is authorized to ''sign all membership certificates and checks, * * * and have general charge of all agents.'' The directors ''shall receive all requests for aid, determine the amount of benefits, pass on all applications for membership for the society and organize and supervise all other special activities sponsored by the society.''

Upon the question of fees and dues the by-laws provide: ''Section 1.—The standard plan for one membership is as follows: The life membership fee is $2.50, the registration fee 50 cents, total $3 to be paid when application is made for membership. Thereafter beginning the first day of the month next following the date of the membership, the standard contribution is 50 cents per month and $1 in January, April, July and October. Two memberships may be carried as well as halves, fifths, tenths, etc., if the member desires.''

Other provisions relate to notices of distress and requests for aid.

Appellant admitted that he had issued these certificates, and had made collections under their provisions. This makes it such an organization as act 139 was intended to regulate.

In Bacon's Life and Accident Insurance, (4th Ed.) vol. 1, § 50, it is said: ''It follows from the foregoing adjudications, that all benefit societies, whether corporations or mere voluntary associations, are, strictly speaking, insurance organizations whenever, in consideration of periodical contributions, they engage to pay the member, or his designated beneficiary, a benefit upon the happening of a specified contingency.''

280

The "Union Aid Society" is such an organization, and its social, civic and fraternal features do not divest it of that character, and its operation without the required authorization is a violation of the law, and the trial court did not err in so instructing the jury.

Judgment affirmed.